UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMIRHOSSEIN NILI,<br><br>      Plaintiff,<br>  v.<br><br>ANTONY BLINKEN, *et al.*,<br><br>      Defendants. | Civil Action No. 23-2929 (CKK) |

**MEMORANDUM OPINION**
(November 16, 2023)

On October 2, 2023, Plaintiff Amirhossein Nili filed a [1] Complaint ("Compl.") seeking a judgment compelling Secretary of State Antony Blinken; Attorney General of the United States Merrick Garland; Assistant Secretary of State for Consular Affairs Rena Bitter; Deputy Assistant Secretary and Managing Director for Visa Services in the Department of States Bureau of Consular Affairs Julie M. Stufft; and Chargé d'Affaires, U.S. Embassy in Muscat, Omana Leslie Ordeman (together, "Defendants"), to render a decision on his H-1B visa application, pursuant to the Administrative Procedure Act's ("APA") bar on "unreasonabl[e] delay." 5 U.S.C. § 706(1). The Court then issued an order stating that the matter was before the Court on *sua sponte* review of Plaintiff's Complaint. *See* Minute Order, Oct. 5, 2023. The Court ordered Plaintiff to show cause on or before October 19, 2023 why Plaintiff's Complaint should not be dismissed *sua sponte* for failure to state a claim. *Id.* Plaintiff then filed the [8] Response to Order to Show Cause ("Pl.'s Resp."). Upon review of the Plaintiff's [1] Complaint, [8] Response, the relevant legal authority, and the record as a whole, the Court shall *sua sponte* **DISMISS** Plaintiffs' [1] Complaint in its entirety.

1

## I. BACKGROUND

Plaintiff Amirhossein Nili is a citizen of Iran and initially came to the United States on a G-4 visa as a dependent of his father. Compl. ¶ 11. He has lived in the United States since August 2015. *Id.* ¶ 22. He attended university in the United States in G-4 immigrant status and, in 2019, was issued an F-1 nonimmigrant visa to travel to the United States to pursue a Master's degree. *Id.* ¶ 12. After completing his Master's, Mr. Nili began working for Gelber Group, LLC in the United States. *Id.* In March 2022, Gelber Group entered Mr. Nili in the H-1B lottery to work there as a financial quantitative analyst. *Id.* ¶ 13.

Mr. Nili was selected in the H-1B lottery on March 28, 2022. *Id.* ¶ 16. On June 10, 2022, Gelber Group filed a change of status petition requesting Mr. Nili's status be changed from F-1 to H-1B, which was approved by United States Customs and Immigration Services on June 21, 2022. *Id.* On October 1, 2022, Mr. Nili's immigration status was automatically changed from F-1 to H-1B. *Id.*

On March 5, 2023, Mr. Nili left the United States to visit family in Oman. *Id.* ¶ 17. He attended his visa interview at the U.S. Embassy in Muscat, Oman on March 8, 2023. *Id.* At the end of the interview, he was informed that his case was subject to administrative processing. *Id.* He was sent a supplemental questionnaire to complete, which he returned to the U.S. Embassy on March 10, 2023. *Id.* ¶ 18. On March 13, 2023, the U.S. Embassy requested additional documents from Mr. Nili; he reached out the following day and requested clarification as to those documents, which he submitted that same day. *Id.* On March 16, 2023, the U.S. Embassy responded stating that Mr. Nili's case was undergoing administrative processing. *Id.*

On March 20, 2023, Mr. Nili received an email from the U.S. Embassy stating that they were "escalating [his] case for final resolution and [he would] receive a followup email with further

guidance." *Id.* ¶ 19. He followed up on April 5, 2023 and received a response with the same message. Mr. Nili has not received further communication from the U.S. Embassy nor the Department of State since that email on April 5, 2023. *Id.*

Plaintiff Nili then filed this action in October 2023. *See generally id.* He alleges that he has not been able to begin the position of financial quantitative analyst at Gelber Group, and that furthermore, Mr. Nili explains that he has suffered extreme financial hardship as a result. *Id.* ¶ 21. He argues that Defendants' delay in adjudication is unreasonable under the Administrative Procedure Act. *Id.* ¶¶ 30, 33 (citing 5 U.S.C. §§ 555(b), 706(1)).

## II. LEGAL STANDARD

"Ordinarily, the sufficiency of a complaint is tested by a motion brought under Rule 12(b)(6), which tests whether a plaintiff has properly stated a claim" upon which relief can be granted. *Bauer v. Marmara*, 942 F. Supp. 2d 31, 37 (D.D.C. 2013) (RC). However, it is well settled in this Circuit that a court may dismiss a complaint *sua sponte* pursuant to Rule 12(b)(6) where it is "patently obvious" that the plaintiff cannot prevail on the facts alleged in the complaint. *Baker v. Director, U.S. Parole Comm'n*, 916 F.2d 725, 726–27 (D.C. Cir. 1990) (per curiam).

Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint on grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint is not sufficient if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[T]he Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Nat'l Postal Prof'l Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 27 (D.D.C. 2006) (PLF).

## III.  DISCUSSION

Plaintiff argues that Defendants' delay in adjudication is unreasonable under the Administrative Procedure Act.  Compl. ¶¶ 30, 33 (citing 5 U.S.C. §§ 555(b), 706(1)).  Although a court may order an agency "to perform a [mandatory] act, [i.e.,] to take action upon a matter," a court may not decide "how [the agency] shall act." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004).

To determine whether a plaintiff has sufficiently alleged that agency action has been "unreasonably delayed," courts apply the familiar factors laid out in *Telecommunications Research & Action Center v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984):

(1) the time agencies take to make decisions must be governed by a rule of reason;

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting *TRAC*, 750 F.2d at 80) (internal quotation marks omitted); *see also Skalka v. Kelly*, 246 F. Supp. 3d 147, 152 (D.D.C. 2017) (RJL) (applying *TRAC* factors to claim for mandamus relief). The D.C. Circuit has noted the "importance of competing priorities in assessing the reasonableness of an administrative delay." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003) (internal citations and quotation marks omitted). Critically here, the Court is bound by clear Circuit precedent that it may not grant relief where an "order putting [the petitioner] at the head of the queue [would] simply move[ ] all others back one space and produce[ ] no net gain." *In re Barr Labs., Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991).

### A.  *TRAC* Factors One and Two

The United States Court of Appeals for the District of Columbia Circuit has explained that the first *TRAC* factor—the time agencies take to make decisions must be governed by a "rule of reason"—is the "most important," although it is generally reviewed with the second *TRAC* factor as well. *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). The inquiry centers on "whether the agency's response time… is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Interest v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014) (JEB). Because Congress has provided no statutory timeframe indicating how quickly it requires the State Department to adjudicate and re-adjudicate visa applications, *TRAC* factor two is inapplicable. "To the contrary, Congress has given the agencies wide discretion in the area of immigration processing." *Skalka*, 246 F. Supp. at 153–54 (noting that a two-year delay in processing an immigration visa "does not typically require judicial intervention").

In general, courts in this jurisdiction have regularly found that the Government applies a "rule of reason" to the review of visa petitions by adjudicating applications in the order they were

5

filed. *See, e.g., Muvvala v. Wolf*, No. 20-02423 (CJN), 2020 WL 5748104, at *3 (D.D.C. Sept. 25, 2020) ("Other federal courts have held that this first-in, first-out method of adjudication constitutes a 'rule of reason' and satisfies the first TRAC factor."). Courts in this jurisdiction often look to the length of delay as a rough yardstick to determine whether that "first-in, first-out" rule is, in fact, being applied.

Plaintiff Nili had his interview in March 2023 and, since then, his application has remained in administrative processing. He argues that this delay of what is now eight months is unreasonable. *Id.* ¶ 31. However, courts in this jurisdiction routinely find that delays of numerous *years* are not unreasonable. *See, e.g.*, *Zaman v. U.S. Dep't of Homeland Sec.*, No. 19-3592 (ABJ), 2021 WL 5356284, at *6 (D.D.C. Nov. 16, 2021) (finding that a delay of forty-two months was "insufficient to warrant emergency relief in this district"); *Pourshakouri v. Pompeo*, No. 20-0402 (RJL), 2021 WL 3552199, at *8–9 (D.D.C. Aug. 11, 2021) (finding delay of forty-four months not unreasonable); *Varghese v. Blinken*, No. 21-2597 (CRC), 2022 WL 3016741, at *5 (D.D.C. July 29, 2022) (finding delay of "around four years" does "not warrant judicial intervention, standing alone"); *Arab v. Blinken*, No. 21-1852 (BAH), 2022 WL 1184551, at *8 (D.D.C. Apr. 21, 2022) (ruling that a thirty-month delay was not unreasonable); *see also Yavari v. Pompeo*, No. 2:19-cv-02524, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019) ("District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable.").

Plaintiff argues that his case is distinguishable from others in which Courts have held lengthier delays not to be unreasonable because he seeks a *nonimmigrant* visa as opposed to an *immigrant* visa. *See* Pl.'s Resp. at 2–3. As Plaintiff explains, Mr. Nili has lived in the United States for eight years, has established a life in the United States, obtained two degrees from

universities in the United States, secured full-time employment in the United States, and has been issued visa stamps by the United States Department of State on three previous occassions. *Id.* at 3. Plaintiff continues that his "facts are materially different from other cases where a delay of less than five (5) years was deemed reasonable by the Court." *Id.* Yet Plaintiff does not offer any legal authority for this proposition nor for why that would necessitate a stricter rule of reason. *Cf. Sawahreh v. U.S. Dep't of State*, 630 F. Supp. 3d 155, 162 (D.D.C. 2022) (JEB); *Shen v. Pompeo*, No. 20-1263 (ABJ), 2021 WL 1246025, at *8 (D.D.C. Mar. 24, 2021). As other courts have held, "whether or not the type or length of [Plaintiff's] visa makes his application more time sensitive than [other visa applications] is not for Plaintiff or this Court to decide," but rather is "exactly the kind of question within the purview of the wide discretion in immigration processing that Congress has given Defendants." *Sawahreh*, 630 F. Supp. 3 at 162–63; *see also Shen*, 2021 WL 1246025, at *8.

Plaintiff also argues that his application is "noticeably less complex than previous cases reviewed by the Court" and that because his "qualifications for the H-1B visa category have already been adjudicated by [USCIS]," his application should be adjudicated more quickly. Pl.'s Resp. at 3–4. However, Plaintiff offers no legal authority for these propositions either.

Accordingly, the time period for which Plaintiff Nili's application has been in administrative processing is well within the bounds of that which other courts have found reasonable. The Court finds that the first and second *TRAC* factors do not lend credence to Plaintiff's claim. As *TRAC* factor one is considered the "most important" factor, this finding weighs heavily in the Court's ultimate holding.

B. *TRAC* Factors Three & Five

The third and fifth *TRAC* factors are often considered together and require the Court to consider Plaintiff's interests, health, and welfare. *Ghadami v. U.S. Dep't of Homeland Sec.*, No. 19-00397 (ABJ), 2020 WL 1308376, at *9 (D.D.C. Mar. 19, 2020).

Gelber Group has held the financial quantitative analyst position open for Plaintiff but, he alleges, "[i]t is unclear how long [they] will keep this position vacant" given the delay in processing his application. Pl.'s Resp. at 6. His employment is in jeopardy, and furthermore, he has lost income while unable to return to the United States and begin that job. *Id.* at 7–8. Plaintiff also alleges that he has forgone multiple professional opportunities with the expectation that he would have been able to continue his employment at Gelber Group. Compl. ¶¶ 20–21. The Court finds that factor five—regarding Plaintiff's interests—weighs in his favor, as Mr. Nili has demonstrated he is suffering real hardships related to his uncertain professional future. *Cf. Khoshrou v. Blinken*, No. 22-2859, 2023 WL 4930086, at *4 (D.D.C. Aug. 2, 2023) (CKK); *Rezaei v. Garland*, No. 23-1645, 2023 WL 5275121, at *3 (D.D.C. Aug. 16, 2023) (CKK); *Fakhimi v. Dep't of State*, No. 23-1127, 2023 WL 6976073, at *9 (D.D.C. Oct. 23, 2023) (CKK); *Shen*, 2021 WL 1246025, at *8; *Rahman v. Blinken*, No. 22-2732 (JEB), 2023 WL 196428, at *4 (D.D.C. Jan. 17, 2023).

However, Plaintiff has failed to plead plausible allegations of harm to Mr. Nili's health and welfare, *cf. Shen*, 2021 WL 1246025, at *8, that are present in other cases in which courts have weighed factor three in a plaintiff's favor, *see, e.g.*, *Ghadami*, 2020 WL 1308376, at *9 (weighing third and fifth TRAC factors in favor of visa applicant who alleged that he was "irrevocably harmed" by separation from his children and wife due to government's delay in rendering a decision on whether he was entitled to waiver of immigration restrictions in

8

Presidential Proclamation 9645); *Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020) (CRC) (finding plaintiffs' interests in having their waiver application adjudicated were "undeniably significant" because they had "to endure a prolonged and indefinite separation, thereby forcing them to delay beginning their life as a married couple").

Plaintiff states that he has resided in the United States in 2015 and, as a result, has established ties to the United States but that he "cannot make any long-term plans" and is in "constant limbo regarding whether he must leave his life in the United States." Pl.'s Resp. at 5–6. He also alleges that he has suffered "significant mental distress as he juggles maintaining his life in the United States while establishing a temporary living situation outside the United States." *Id.* at 6. Additionally, Plaintiff explains that he has the "financial burden of maintaining assets in the United States," and that he "cannot dispose of any assets in the United States without incurring significant cost as he would be required to retain an agent who is authorized to manage his assets in the United States." *Id.* at 8.

Although the Court is sympathetic to these concerns, it must also be mindful that "many others face similarly difficult circumstances as they await adjudication of their visa applications." *Mohammed v. Blinken*, No. 20-3696, 2021 WL 2866058, at *6 (D.D.C. July 8, 2021) (TNM); *see also Palakuru v. Renaud*, 521 F. Supp. 3d 46, 53 (D.D.C. 2021) (TNM) ("While the Court does not doubt that [plaintiff] has an interest in prompt adjudication, so too do many others facing similar circumstances"). Plaintiff's economic and personal hardships here are insufficient to tilt factor three in his favor.

As such, the third and fifth factors, on balance, do not support Plaintiff's case.

### C. *TRAC* Factor Four

Next, *TRAC* factor four requires an assessment of "the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80.

Granting Plaintiff Nili the relief he seeks would merely "reorder a queue of applicants seeking adjudication." *Tate v. Pompeo*, 513 F. Supp. 3d 132, 149 (D.D.C. 2021) (BAH). Plaintiff argues that "the expediting of [his] visa application will have a minimal impact on the U.S. Embassy in Muscat's overall visa processing activities" because he has been issued a visa stamp on three previous occasions without issue; the U.S. Embassy "raised no concerns regarding the Plaintiff's qualifications for H-1B nonimmigrant visa status;" he has not been arrested, charged, or convicted of a criminal offense; and because the Embassy has all documents and information necessary to adjudicate his application. Pl.'s Resp. at 7. However, these alleged facts do not necessarily lead to the conclusion that Plaintiff draws, as different visa applications vary in complexity and he cannot speculate on the impact that expediting his visa would have on overall visa processing. Additionally, the relief that Mr. Nili seeks—which he admits is "the expediting of [his] visa application," *id.*—is exactly what factor four counsels against: a "reorder a queue of applicants seeking adjudication," *Tate v. Pompeo*, 513 F. Supp. 3d 132, 149 (D.D.C. 2021) (BAH).

The D.C. Circuit has emphasized the importance of considering "competing priorities" in assessing the "reasonableness of an administrative delay"—even "refus[ing] to grant relief when all the other factors considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue [would] simply move[] all others back one space and produce[] no net gain." *Mashpee Wampanaoag Tribal Council, Inc.*, 336 F.3d at 1100 (quoting *In re Barr*, 930 F.2d 72, 75 (D.C. Cir. 1991)); *see also Ghadami*, 2020 WL 1308376, at *9 (finding that "expediting review in [the plaintiff's] case would merely direct government resources from the adjudication of other

waiver applications"). Any such order would plainly interfere with the agency's "unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *In re Barr*, 930 F.2d at 76.

Courts in this jurisdiction, including *this* Court, routinely decline to grant relief that would place one prospective visa applicant ahead of others. *See, e.g.*, *Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 13 (D.D.C. 2021) (TJK) ("This factor not only favors Defendants, but ends up altogether dooming Plaintiffs' claims of unreasonable delay."); *Verma v. U.S. Citizenship and Immigr. Servs.*, No. 20-3419 (RDM), 2020 WL 7495286, at *9 (D.D.C. Dec. 18, 2020); *Dehghanighanatghestani v. Mesquita,* No. 22-2595 (CKK) 2022 WL 4379061, at *7 (D.D.C. Sept. 22, 2022); *Pushkar v Blinken*, No. 21-2297, 2021 WL 4318116, at *7 (D.D.C. Sept. 23, 2021) (CKK); *Desai v. USCIS*, No. 20-1005 (CKK), 2021 WL 1110737, at *7 (D.D.C. Mar. 22, 2021); *Manzoor v. USCIS*, No. 21-2126 (CKK), 2022 WL 1316427, at *5–*6 (D.D.C. May 3, 2022). The Court will now do the same here, finding that the fourth *TRAC* factor weighs strongly against Plaintiff.

### D.  *TRAC* Factor Six

Finally, the sixth *TRAC* factor states that a "[c]ourt need not find any impropriety lurking behind agency lassitude in order to hold the agency action is unreasonably delayed." *Ghadami*, 2020 WL 1308376, at *9.  The Court "must determine whether the agency has acted in bad faith in delaying action." *Gona v. U.S. Citizenship & Immigr. Servs.*, 20-3680 (RCL), 2021 WL 736810, at *5 (D.D.C. Feb. 25, 2021).

Here, Plaintiff admits that "[t]his factor does not apply as the Plaintiff is not alleging that the Department of State is acting in bad faith with respect to the Plaintiff's visa application." Pl.'s Resp. at 8.  As *TRAC* directs, however, the lack of plausible allegations of impropriety does

not weigh against Plaintiff Nili, and therefore does not alter the Court's analysis. *See Palakuru*, 2021 WL 674162, at *6 (considering the sixth TRAC factor "neutral" even though the plaintiff alleged that the government had engaged in "purposeful delay" and "artificially inflate[d] [] processing times").

\* \* \*

Altogether the Court finds that, based on the Court's analysis under the *TRAC* factors, it is "patently obvious" that Plaintiff Nili cannot prevail on the facts alleged in his Complaint to make out a claim for unreasonable delay of his visa application. Therefore, the Court concludes that Plaintiff's Complaint must be dismissed *sua sponte* for failure to state a claim under Rule 12(b)(6).

### IV. CONCLUSION

For the foregoing reasons, the Court shall shall *sua sponte* **DISMISS** Plaintiffs' [1] Complaint in its entirety. An appropriate order accompanies this Memorandum Opinion.

_/s/_
COLLEEN KOLLAR-KOTELLY
United States District Judge
